IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00901-MSK-BNB

JAMES RALPH DAWSON, JR.,

Plaintiff,

v.

PAUL AUDET,
SUSAN AUDET, a.k.a. DEANNE AUDET,
DONALD BRIGHTWELL,
DINO WILLIAMS,
ANGEL MEDINA,
STEVEN OWENS, and
ANTHONY DeCESARO,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the defendants' **Motion to Dismiss** [Doc. #27, filed 07/30/2012] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493

(1986); <u>Mitchell v. King</u>, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain

specific allegations sufficient to establish that it plausibly supports a claim for relief.  <u>Alvarado</u>

<u>v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), overruled on other grounds by <u>Davis</u>

<u>v. Scherer</u>, 468 U.S. 183 (1984).

       The standard of review for a motion to dismiss for lack of subject matter jurisdiction

under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject
> matter jurisdiction take two forms. First, a facial attack on the
> complaint's allegations as to subject matter jurisdiction questions
> the sufficiency of the complaint.  In reviewing a facial attack on
> the complaint, a district court must accept the allegations in the
> complaint as true.
>
> Second, a party may go beyond allegations contained in the
> complaint and challenge the facts upon which subject matter
> jurisdiction depends.  When reviewing a factual attack on subject
> matter jurisdiction, a district court may not presume the
> truthfulness of the complaint's factual allegations.  A court has
> wide discretion to allow affidavits, other documents, and a limited
> evidentiary hearing to resolve disputed jurisdictional facts under
> Rule 12(b)(1). In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56
> motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to
> dismiss into a Rule 12(b)(6) motion or a Rule 56 summary
> judgment motion when resolution of the jurisdictional question is
> intertwined with the merits of the case.  The jurisdictional question
> is intertwined with the merits of the case if subject matter
> jurisdiction is dependent on the same statute which provides the
> substantive claim in the case.

<u>Holt v. United States</u>, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

2

## II.  BACKGROUND

The plaintiff filed his Prisoner Complaint on April 5, 2012 [Doc. #1] (the "Complaint"). At all times pertinent to the allegations of the Complaint, the plaintiff was incarcerated by the Colorado Department of Corrections ("DOC") at the Limon Correctional Facility ("LCF").

The Complaint contains the following allegations:

1.   On September 30, 2011, while working in the prison recreation yard, the plaintiff informed a prison official that he needed to make a telephone call to his civil rights attorney during his "unit's pod time."  The official told him to inform defendant Paul Audet of his need to leave work to make the call. *Complaint*, p. 5.[1]

2.   The plaintiff informed Lt. Audet that he needed to leave work for twenty minutes to make a legal call.  Lt. Audet told the plaintiff that he had to make his legal calls on his days off from work.  The plaintiff's days off are Saturday and Sunday.  The plaintiff told Lt. Audet that he was going to "grieve him for not allowing [the plaintiff] to make a legal call during the only available time to make legal calls."  Lt. Audet became angry and ordered the plaintiff to leave. Id.

3.   The plaintiff went to his unit to make the call, but the call would not go through.  Id. at p. 6.

4.   When the plaintiff returned to work that day, a prison official told him that Lt. Audet had fired him for failure to work.  The official also said that the plaintiff "was doing good with

---

[1]I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

Audet until [the plaintiff] said that [he] was going to file a grievance against him about not being able to make a legal call.  That Audet didn't like that." Id.

5.    The plaintiff immediately filed a grievance and wrote a letter to defendant Dino Williams about what had occurred.  The plaintiff requested that Major Williams investigate the incident and reinstate his job.  He further requested that Major Williams interview the prison officials who were involved to verify that Lt. Audet fired the plaintiff for threatening to file a grievance. Id.

6.    The plaintiff spoke with Major Williams three days later.  Major Williams "promised to resolve Audet's conduct."  However, the plaintiff later discovered that Major Williams and Lt. Audet are good friends and that Williams had "joined the retaliation by affirming [the plaintiff's] job termination."  Major Williams never interviewed the prison officials as requested by the plaintiff. Id.

7.    On October 27, the plaintiff verified that his civil rights attorney, Michael Thomson, had been removed from his call list by one of the telephone monitors.  Defendant Susan Audet, wife of Lt. Audet, was the only telephone monitor working on September 30, 2011, when the plaintiff's call did not go through "and attorney Michael Thomson had been completely removed from [his] calling list." Id. at pp. 6-7.

8.    Mr. Thomson was the plaintiff's civil rights attorney in a previous case and has been on his call list for eight years.[2]  He was removed from the list for 60 days to prevent him from

---

[2]The plaintiff has filed 12 cases in this court since 1997: 97-cv-01943-ZLW-BNB; 01-cv-01084-RPM-OES; 01-cv-1191-ZLW-MJW; 02-cv-00234-ZLW-MJW; 03-cv-00466-ZLW-BNB; 03-cv-00726-ZLW; 07-cv-02473-REB-BNB; 08-cv-01976-ZLW; 09-cv-00148-RPM-BNB; 09-cv-02526-ZLW; 09-cv-02819-ZLW; and 12-cv-00901-MSK-BNB.

assisting the plaintiff in two pending civil rights complaints with the United States Justice

Department in Washington, D.C., and a petition for a writ of certiorari in Colorado.  The Justice

Department complaints were inadequate and failed.  The certiorari petition was denied on March

5, 2012.  Id. at p. 11.

9.    Prior to the plaintiff's termination, Defendant Angel Medina, LCF Warden, started a

new program where inmates with jobs were allowed out of their cells for 20 to 30 minutes three

times daily, and inmates without jobs were allowed out of their cells for 30 minutes per day.  The

plaintiff prepared grievances for inmates so they could challenge the Warden's new program.  Id.

at p. 7.

10.    On July 28, 2011, "ninety days after most of the inmates had exhausted their step-3

grievances," Dr. Brunt, a mental health doctor, approached the plaintiff and said that Warden

Medina had asked him to check on the plaintiff's health because someone told the Warden that

the plaintiff was tired of "doing time at the Limon Prison."  Dr. Brunt told the plaintiff that "he

could not find the Warden's point of reference."  "A red flag went up in [the plaintiff's] mind"

because he is classified as a jailhouse lawyer; he has sued the DOC eight times to challenge

prison conditions; and he did not tell anyone that he was tired to doing time at Limon.  "It was a

lie, so being familiar with the forthcoming signs of retaliation, [the plaintiff] filed a grievance to

document the incident."  Id. at pp. 7-8.

11.    On August 11, 2011, Lt. Audet met with the plaintiff and informed him that

someone in the recreation department had "placed the alleged remark" in the prison incident files

and that there was no retaliatory intent by the Warden.  The plaintiff later conducted his own

investigation and asked every recreation staff member whether they had "put the remark" in the

plaintiff's file.  They all said "no,' and opined that Lt. Audet was responsible for the remark.  Id. at p. 8.

12.   Between October 3, 2011, and November 24, 2011, Warden Medina allowed the plaintiff out of his cell for 5.5 hours each week.  The plaintiff was not permitted to make any prepaid legal calls.  From Monday through Friday, he was given 30 minutes each day and had to choose between seeking legal assistance from fellow inmates, showering, cleaning the cell, and using prepaid telephone calls.  He was not awarded statutory earned time.  Id.  The plaintiff was allowed out of his cell for only half the time as other inmates.  Warden Medina told the plaintiff and other inmates that if they would volunteer for his new program, they would not have to "worry about being mistreated."  Id. at p. 13.

13.   The plaintiff is 56 years old.  The lack of exercise has caused his blood pressure to be so high that he is exposed to the risk of heart attack, stroke, and hypertension.  The lack of exercise has also caused the plaintiff's blood sugar levels to fluctuate and exposed him to the risk of diabetes.  After a week, he started experiencing dizziness and headaches.  His mental health "was ruined [due] to having migraines."  He does not know the extent of his injuries because he has not been examined by a doctor.  Id. at p. 9.

14.   The plaintiff did not have time to receive legal help from fellow inmates or his attorney "to research and articulate a comprehensive legal argument for a petition for writ of certiorari to the Colorado Supreme Court."  The petition was denied On March 5, 2012.  Id.

The plaintiff asserts the following six claims for relief:[3]

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging

Claim One is asserted against Lt. Audet for violating the plaintiff's First Amendment rights to free speech and to petition the government for redress of grievances, and his Sixth Amendment right to counsel when Lt. Audet fired the plaintiff for threatening "to grieve him." Claim One further alleges that Lt. Audet conspired with his wife, Susan Audet, "or other party" "to make sure that she removed [the plaintiff's] attorney from [his] call list." Id. at p. 10.

Claim Two is asserted against Lt. Audet and Susan Audet for violating 18 U.S.C. § 2701(a)(2); the plaintiff's First Amendment rights to free speech and to petition the government for redress of grievances; and his Sixth Amendment right to counsel when the Audets conspired to stop the plaintiff from contacting his attorney. Claim Two further alleges that the Audets retaliated against the plaintiff for threatening to grieve Lt. Audet. Id. at p. 11.

Claim Three alleges that Major Williams violated the plaintiff's First Amendment rights to free speech and to petition the government for redress of grievances when he conspired with Lt. Audet to not interview officials or investigate the plaintiff's termination. Major Williams also altered one of the plaintiff's grievances to make it appear that the plaintiff missed his grievance deadline. Id. at p. 12.

Claim Four alleges that Warden Medina violated the plaintiff's Eighth and Fourteenth Amendment rights when he denied the plaintiff legal assistance from other inmates, exercise, access to grievances, showers, clean cells, statutory earned time credits, and prepaid calls. Warden Medina also conspired with the Audets to prevent the plaintiff from challenging unconstitutional living conditions, and he retaliated against the plaintiff by firing him from his job and punishing him for not having a job. Id. at p. 13.

---

sufficient facts on which a recognized legal claim could be based").

Claim Five alleges that the plaintiff's Case Manager, defendant Donald Brightwell, violated the plaintiff's First Amendment rights to freedom of speech, freedom of expression, and right to petition the government for redress of grievances when he classified the plaintiff's termination as a "firing" rather than a "release."  The classification erased nine years of seniority from the plaintiff's job status; required that he wait 30 days to be eligible for placement in another job; and caused him to lose his single cell status and other privileges for 54 days.  The plaintiff's grievance against Lt. Audet was submitted to Brightwell.  He "took offense to the grievance and changed [the plaintiff's] release to a firing."  Id. at p. 14.

Claim Six alleges that defendants Steve Owens and Anthony DeCesaro "joined in a conspiracy with the other named Defendants to retaliate against [the plaintiff]' by altering his Step II and Step III retaliation grievance and falsely declaring that he did not exhaust his administrative remedies.  Id. at p. 15.

The plaintiff sues the defendants in their individual and official capacities.  *Complaint*, pp. 2-3.  He seeks monetary, injunctive and declaratory relief.  Id. at p. 20.  The defendants seek dismissal of the Complaint on many bases.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Official Capacity Claims

The defendants assert that the plaintiff's claims against them in their official capacities are barred by Eleventh Amendment Immunity. *Motion*, pp. 1-2. This is a facial challenge to the Complaint. Therefore, I accept the allegations in the Complaint as true. Holt, 46 F.3d at 1003.

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. 89, 102-03,105-06 (1984). The defendants are employed by the Colorado Department of Corrections (the "DOC"). *Complaint*, p. 2. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against the defendants in their official capacities for retroactive monetary relief.

The Motion should be granted insofar as it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

### B. Individual Capacity Claims

The defendants assert that they are entitled to qualified immunity. *Motion*, pp. 22-23. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly

9

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established"

for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I  consider two factors.  I must

determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional

right.  In addition, I must inquire whether the right was clearly established at the time of the

violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas,

172 F.3d 736, 745 (10th Cir. 1999).[4]

## 1.   Claim One

Claim One is asserted against Lt. Audet for violating the plaintiff's First Amendment

rights to free speech and to petition the government for redress of grievances (the "right  to

access the court"), and his Sixth Amendment right to counsel when he fired the plaintiff for

threatening "to grieve him."  Claim One further alleges that Lt. Audet conspired with his wife,

Susan Audet, "or other party" "to make sure that she removed [the plaintiff's] attorney from [his]

call list."  *Complaint*, p. 10.

---

[4]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, 555
U.S.223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of Albuquerque,
589 F.3d 1064, 1070 (10th Cir. 2009).

### a. Right to Access the Court

The right to access the courts is a fundamental constitutional right.  Bounds v. Smith, 430

U.S. 817, 828 (1977).  The filing of an administrative grievance is protected under the First

Amendment.  Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991).  However, an inmate

alleging denial of access to the courts must allege an actual injury.  Lewis v. Casey, 518 U.S.

343, 349 (1996).  To establish actual injury, the inmate must show that "the denial of legal

resources hindered the prisoner's efforts to pursue a nonfrivolous claim."  Id. at 356.  Penrod v.

Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).  The plaintiff does

not allege that Lt. Audet's refusal to permit him to contact his attorney on September 30, 2011,

hindered his efforts to pursue a nonfrivolous claim.

### b. Right to Free Speech and Right to Counsel

The plaintiff does not allege any facts that implicate his First Amendment right to free

speech.[5]  He does not allege that he was deprived of other means of communicating with his

attorney, and he does not allege that Lt. Audet restricted him from calling his attorney on any

other occasion.  See Burnett v. Jones, 437 Fed.Apx. 736, 744-45 (10th Cir. August 31, 2011)

(declining to find a First Amendment violation where one call to the plaintiff's son, an attorney,

was blocked, and the plaintiff was not challenging the prison's telephone policy).

---

[5]  I interpret the plaintiff's free speech claims as separate from his right to access claims.
See Nordgren v. Milliken, 762 F.2d 851, 853 (10th Cir. 1985) (stating that the right to access the
courts has been viewed as protected by the Privileges and Immunities Clause; the First
Amendment's Right to Petition Clause; and the Due Process Clause); Burnett v. Jones, 437
Fed.Apx. 736, 744-45 (10th Cir. August 31, 2011) (acknowledging that "a prisoner's right to
telephone access is subject to rational limitations in the face of legitimate security interests of the
penal institution").

The plaintiff's Sixth Amendment claim also fails because the Sixth Amendment right to counsel applies only to criminal trials.  U.S. Const. Amend. VI.

### c.  Conspiracy

The defendants argue that the plaintiff has failed to state a claim for conspiracy.  *Motion*, pp. 21-22.  In order to state a claim for conspiracy, a plaintiff must "allege specific facts showing agreement and concerted action" among the defendants.  Hunt v. Bennet, 17 F.3d 1263, 1266 (10th Cir. 1994).  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."[6] Id.

Here, the plaintiff alleges that Lt. Audet and Susan Audet are married and that Susan Audet was the only telephone monitor working on the day the call would not go through and his attorney was removed from the call list.  *Complaint*, pp. 6-7, 11.  However, he also alleges that Lt. Audet conspired with his wife "or other party" to make sure that his attorney was removed from the list.  Id. at p. 10.  Consequently, the conspiracy claim is speculative and not founded on specific factual allegations.  Moreover, the plaintiff also alleges that his attorney was removed from the list for 60 days to prevent him from obtaining assistance on two pending civil rights complaints and a petition for a writ of certiorari.  Id. at p. 11.  These allegations contradict the plaintiff's allegations of a conspiracy between Lt. Audet and Susan Audet to remove the plaintiff's attorney from the list as a result of the plaintiff threatening to grieve Lt. Audet.  The

---

[6]The plaintiff argues that he "cannot defeat a motion to dismiss" his conspiracy claims until discovery is completed.  *Plaintiff's Response to the Defendant's Motion to Dismiss* [Doc. #28], p. 1; Ex. 2.  However, in deciding a motion to dismiss, the court does not look for evidentiary support; it looks to the allegations of the complaint to determine if the plaintiff has alleged sufficient facts to state a plausible claim.

plaintiff's allegations of a conspiracy between Lt. Audet and Susan Audet are vague, conclusory, and contradictory, and the claim should be dismissed.

### d. Retaliation

In Claims One and Two, the plaintiff alleges that Lt. Audet terminated the plaintiff's employment in retaliation for threatening to file a grievance against Lt. Audet. The defendants argue that the plaintiff fails to state a claim for retaliation against Lt. Audet. *Motion*, pp. 7-9.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts." Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even if the action taken in retaliation would be otherwise permissible." Id. at 948. An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st

Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

Here, the plaintiff alleges that he informed Lt. Audet that he needed to leave work to make a telephone call; Lt. Audet told him he could not leave work to make the call; the plaintiff informed Lt. Audet that he was going to file a grievance against him; Lt. Audet ordered him to leave; and Lt. Audet terminated his employment that afternoon. *Complaint*, pp. 5-6. He further alleges that a prison official told him that he "was doing good with Audet until [the plaintiff] said that [he] was going to file a grievance against him about not being able to make a legal call. That Audet didn't like that." Id. at p. 6. These allegations are sufficient to state a claim that Lt. Audet terminated the plaintiff's employment in retaliation for threatening to file a grievance against him. Lt. Audet is not entitled to qualified immunity on this claim because an inmate's right to be free from retaliation for exercising his constitutional right to access the courts has been well-established for decades.  Smith, 899 F.2d at 947.

The fact that the plaintiff had not yet filed the grievance is of no consequence. "[W]hen it comes to protecting First Amendment rights, including the right to petition the government for redress, there is little difference between retaliating against a person for filing a grievance, and retaliating for threatening to file one." Carter v. Dolce, 647 F.Supp.2d 826, 834 (E.D.Mich. 2009) (citing Jackson v. City of Columbus, 194 F.3d 737, 756-57 (6th Cir. 1999) (holding that an employee engages in protected activity under the First Amendment when he threatens to file a lawsuit on a matter of public concern), *abrogated on other grounds by* Swierkiewicz v. Sorema

14

N.A., 534 U.S. 506 (2002); Polk v. Yellow Freight System, Inc., 801 F.2d 190, 200 (6th Cir.

1986) (noting that there is no legal distinction  . . . between the filing of a charge which is clearly

protected . . . and threatening to file a charge under Title VII's anti-retaliation provisions)

(internal quotations and citation omitted)).

The Motion should be denied to the extent it seeks dismissal of Claim One's allegations

of retaliation against Lt. Audet and granted to the extent it seeks dismissal of Claim One's other

allegations.

## 2.   Claim Two

Claim Two is asserted against Lt. Audet and Susan Audet for violating 18 U.S.C. §

2701(a)(2); the plaintiff's First Amendment rights to free speech and to petition the government

for redress of grievances; and his Sixth Amendment right to counsel when they conspired to stop

the plaintiff from contacting his attorney.  Claim Two further alleges that the Audets retaliated

against the plaintiff for threatening to grieve Lt. Audet.  *Complaint*, p. 11.

As a preliminary matter, the federal criminal statutes do not provide for private civil

causes of action.  Kelly v. Rockefeller, 69 Fed.Appx. 414, 415-16, 2003 WL 21386338, at *2

(10th Cir. June 17, 2003) (stating that the "district court correctly dismissed plaintiff's claims

under 18 U.S.C. § 241 and § 245, for failure to state a claim, because the criminal statutes do not

provide for private civil causes of action"); Henry v. Albuquerque Police Dept., 49 Fed. Appx.

272, 273, 2002 WL 31379859, at *1 (10th Cir. October 23, 2002) (stating that "18 U.S.C. §§ 241

and 242 ... like other [criminal] statutes, do not provide for a private civil cause of action").  The

plaintiff's claim pursuant to 18 U.S.C. § 2701(a)(2) should be dismissed.

In addition, I have already found that the plaintiff failed to state a claim regarding his First Amendment right to free speech and right to access the court; his Sixth Amendment right to counsel claim; and his claim that Lt. Audet and Susan Audet conspired to remove the plaintiff's attorney from the list as a result of the plaintiff threatening to grieve Lt. Audet.

Finally, Claim Two alleges that the Susan Audet retaliated against the plaintiff for threatening to grieve Lt. Audet. The retaliatory act of Susan Audet is unclear from the allegations of Claim Two. The plaintiff first alleges that on September 30, 2011, Susan Audet removed the attorney from the plaintiff's call list on the day he threatened to grieve Lt. Audet. *Complaint*, pp. 6-7, 11. Then he alleges that an unidentified person removed his attorney from the call list for 60 days to prevent him from consulting with the attorney about two pending civil rights actions and one petition for a writ of certiorari. Id. He attaches to his Complaint a letter from his attorney to Warden Medina dated December 16, 2011. The attorney states that he has been removed from the plaintiff's call list "which now prevents him from calling me for legal consultation." Id. at Ex. H-2. Thus, it appears that the 60 day removal occurred in mid-October rather than on September 30, 2011, and it is not clear that Susan Audet is responsible for the 60 day removal. To the contrary, the plaintiff alleges that Susan Audet "was scheduled to transfer her job at the prison to the Canon City Complex, but was working on Sept. 30, 2011." Id. at p. 6. The plaintiff's confusing and contradictory allegations are insufficient to state a plausible claim that the Susan Audet retaliated against him for threatening to grieve Lt. Audet.

The Motion should be granted insofar as it seeks dismissal of Claim Two for failure to state a claim upon which relief can be granted.

### 3.   Claim Three

Claim Three alleges that Major Williams violated the plaintiff's First Amendment rights

to free speech and to access the courts by conspiring with Lt. Audet to not interview officials or

investigate the plaintiff's termination.  Claim Three also alleges that Major Williams altered one

of the plaintiff's grievances to make it appear that the plaintiff missed his grievance deadline.

*Complaint*, p. 12.

In order to succeed on his conspiracy claim, the plaintiff must prove both the existence of

a conspiracy and the deprivation of a constitutional right.  Dixon v. City of Lawton, 898 F.2d

1443, 1449 n.6 (10th Cir. 1990).  The plaintiff has not alleged any facts to show that Major

Williams violated his First Amendment rights to free speech or denied him access to the courts.

Because the plaintiff has failed to establish the existence of any constitutional violations, his

conspiracy claim must fail.

### 4.   Claim Four

Claim Four alleges that Warden Medina violated the plaintiff's Eighth and Fourteenth

Amendment rights when he denied the plaintiff "legal assistance from fellow inmates, exercise,

access to grievances, showers, clean cells, case management, prison staff, statutory earn time

credits, and outside communication on pre-paid calls."  Further, it is alleged that Warden Medina

conspired with the Audets to prevent the plaintiff from challenging prison living conditions, and

he retaliated against the plaintiff by firing him from his job and punishing him for not having a

job.  The plaintiff states "[t]his claim is being raised as a 'class of one.'"  He further states that

his "right to petition the government for redress of grievance claim against Defendant Medina is

raised separately from the Eighth and Fourteenth Amendment Class of One Claim." *Complaint*, p. 13.

### a. Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1.  In the context of a challenge to a state's legislative and regulatory actions, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbroook v. Olech, 528 U.S. 562, 564 (2000) (*per curiam*).   However, the Court would not extend the class of one theory to the public employment context because it involves discretionary decisions which are often subjective and individualized.  Engquist v. Oregon Dept. of Agr., 553 U.S. 591 (2008).  Thus, it is unlikely that the Court would extend the class of one theory to prisoner litigation.

This obstacle notwithstanding, under any equal protection theory, a plaintiff must demonstrate that he was treated "differently than another who is similarly situated."  Olech, 528 U.S. at 564.  The Complaint does not contain any factual allegations from which it can be inferred that Warden Medina treated the plaintiff differently than similarly situated inmates.  To the contrary, the Complaint alleges that under the new program, *all* inmates without jobs were allowed out of their cells for only 30 minutes per day, and that Medina told the plaintiff *and other inmates* that if they would volunteer for his new program, they would not have to "worry about being mistreated." *Complaint*, pp. 7, 13.

### b.  Eighth Amendment

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment prohibition of cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment.  Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation.  Id. at 298.  To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm.  Farmer, 511 U.S. at 834.

The plaintiff alleges that Warden Medina started a new program where inmates with jobs were allowed out of their cells for 20 to 30 minutes three times daily, and inmates without jobs were allowed out of their cells for 30 minutes per day.  *Complaint*, p. 7.  Between October 3, 2011, and November 24, 2011, Warden Medina allowed the plaintiff out of his cell for 5.5 hours each week.  From Monday through Friday, he was given 30 minutes each day and had to choose between seeking legal assistance from fellow inmates, showering, cleaning the cell, and using prepaid telephone calls.  He was not awarded statutory earned time.  Id. at pp. 7, 8, 13.

19

He further alleges:

> Inmates that have been processed for disciplinary and administrative segregation time are given an hour out of their segregation cells daily for exercise, legal assistance, telephone calls, showers, cleaning cell opportunity, and access to case management whereas I was not given an hour to do the same things.  I was given half the time based upon exaggerated security concerns created by Angel Medina pitting rival gang member against each other to justify compromising basic constitutional rights given to prisoners/me.  His statement to me and other prisoners is volunteer for his incentive living units and we won't have to worry about being mistreated.  General population inmates are prohibited from exercising in their unit pods, while incentive unit inmates are not.

Id. at p. 13.

The plaintiff does not allege any facts with regard to denial of earned time credits, case management, and prison staff.  Therefore, it is unclear what type of deprivation he is asserting, and he has not stated a plausible claim for relief regarding denial of them.

The plaintiff alleges that from October 3, 2011, to November 24, 2011, he was only allowed 30 minutes per day to be used between exercise, showers, clean cells, and the ability to make prepaid calls.  The plaintiff does not allege that he was deprived of showers, clean cells, and the ability to make prepaid calls[7] every day during this time period; he alleges only that he did not have time to exercise, and that the lack of exercise caused (a) his blood pressure to be so high that he is exposed to the risk of heart attack, stroke, and hypertension; (b) his blood sugar levels to fluctuate and expose him to the risk of diabetes; (c) dizziness and headaches; and (d) ruined mental health caused by having migraines.  *Complaint*, p. 9.

---

[7]The plaintiff also alleges that he was not able to make any prepaid legal calls.  This allegation is addressed below in my discussion of the allegations against Medina for denial of access to the courts.

20

The Tenth Circuit Court of Appeals has stated that "there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment," Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 810 (10th Cir. 1999).  In Perkins, the court determined that the plaintiff stated an Eighth Amendment claim where he was denied all outdoor exercise for more than nine months.  The court cited Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987), where it found no Eighth Amendment violation resulting from denial of exercise and fresh air while in segregation for an unspecified amount of time and one hour per week of outdoor recreation thereafter.  The court also cited Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994), where it concluded that the plaintiff stated an Eighth Amendment claim when he alleged that he had received only thirty minutes of out-of-cell exercise in three months.  Guided by these cases, I find that the plaintiff has not alleged an excessive risk to his well-being because he was unable to exercise for a period of 52 days.[8]

In addition, the plaintiff has not alleged that Warden Medina acted with deliberate indifference to a serious risk of harm.  The plaintiff does not allege that Warden Medina was aware the plaintiff suffered from any serious health issues from lack of exercise.  Indeed, the plaintiff alleges that *he* does not know the extent of his injuries because he has not been examined by a doctor.  *Complaint*, p. 9.  The Motion should be granted insofar as it seeks dismissal of Claim Four's allegations regarding an Eighth Amendment violation.

---

[8]Even if the deprivation of exercise for 52 days constitutes an excessive risk to the plaintiff's well-being and violates his Eighth Amendment right to be free from cruel and unusual punishment, the right under these circumstances is not clearly established.  Therefore, Medina is entitled to qualified immunity.

### c.   Right to Access the Court

The plaintiff's claims regarding denial of legal assistance and denial of access to grievances are properly asserted as claims for denial of access to the courts.  The plaintiff alleges that under Warden Medina's program, he was not permitted to make any prepaid legal calls, and he had to choose between hygiene and obtaining legal assistance.  *Complaint*, p. 13.  Further, he did not have time to receive legal help from fellow inmates or his attorney "to research and articulate a comprehensive legal argument for a petition for writ of certiorari to the Colorado Supreme Court," and the petition was denied on March 5, 2012.   *Complaint*, p. 9.

Although "an inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus," "the state may not erect barriers that impede the right of access of incarcerated persons."  Carper v. DeLand, 54 F.3d 613, 617 (10th Cir. 1995).  The plaintiff's allegations are sufficient to state a claim against Warden Medina for denial of access to the courts.  The Motion should be denied to the extent it seeks dismissal of Claim Four's allegations regarding denial of access to the court.

### d.   Conspiracy

Finally, the Complaint does not contain any specific facts to show that Warden Medina conspired with the Audets to prevent him from challenging unconstitutional prison living conditions.  Nor does it contain any factual allegations to show that Medina retaliated against the plaintiff by firing him and then punishing him for not having a job.  To the contrary, the Complaint alleges that Lt. Audet fired the plaintiff; Warden Medina instituted the new program

before the plaintiff's employment was terminated; and the new program affected all inmates without jobs.  Therefore, Claim Four should be dismissed insofar as it alleges conspiracy and retaliation.

### 5.   Claim Five

In Claim Five, the plaintiff alleges that Brightwell conspired with the other defendants to violate his First Amendment rights to freedom of speech, freedom of expression, and right to petition the government for redress of grievances when he changed the classification of the plaintiff's termination from a "release" to a "firing."  *Complaint*, p. 14.  He also alleges that Brightwell retaliated against him for threatening to grieve Lt Audet.  The defendants seek dismissal of Claim Five based on the plaintiff's failure to allege that defendant Brightwell personally participated in the alleged constitutional violations.  *Motion*, pp. 2-4.

In support of Claim Five, the plaintiff alleges that he submitted his grievance against Lt. Audet to Brightwell.  Defendant Brightwell "took offense to the grievance and changed [the plaintiff's] release to a firing."  The classification erased nine years of seniority from the plaintiff's job status; required that he wait 30 days to be eligible for placement in another job; and caused him to lose his single cell status and other privileges for 54 days.  *Complaint*, p. 14.

The plaintiff does not allege any facts that implicate his First Amendment right to free speech and expression.  Nor has he alleged that he suffered any actual injury to sustain his claim for denial of access to the court.  In addition, he has not alleged any specific facts to state a plausible claim that Brightwell conspired with all of the other defendants to violate his constitutional rights.

The plaintiff <u>has</u> stated a plausible claim that Brightwell retaliated against him for filing a grievance against Lt. Audet.  He alleges that he submitted the grievance against Audet to Brightwell, and Brightwell took offense to the grievance and changed his termination classification.  The Motion should be denied insofar as it seeks dismissal of Claim Five's allegations of retaliation against Brightwell.  The remaining allegations of Claim Five should be dismissed.

### 6.   Claim Six

In Claim Six, the plaintiff alleges that Steve Owens and Anthony DeCesaro "joined in a conspiracy with the other named Defendants to retaliate against [the plaintiff]" by altering his Step II and Step III retaliation grievance and falsely declaring that he did not exhaust his administrative remedies.  *Complaint*, p. 15.  Claim Six is the only claim asserted against these defendants, and it contains the only allegations against them.  Claim Six states in its entirety:[9]

> On Dec. 19th and 23rd 2011, I wrote a letter to Anthony Decesaro regarding the altering of my Incident Report, Step II. Grievance, & Step III. Grievance No. # R-LF-11/12-00005662-1 by Donald Brightwell, Dino Williams, and Steven Owens to sabotage my administrative remedy exhaustion attempts, rather than investigate the misconduct from the evidence that I submitted to him, he joined in the conspiracy and falsely stated that I had not exhausted my prison administrative remedies.  Please see attached Exhibits D.  (Step-1 Grievance): E.  (Step-2 Grievance) F. 1&2 (Step-3 Grievance) : G.1&2 (Successive Step-3 Grievance).
>
> I was forced to file subsequent grievances regarding the grievance interference.  I investigated several other prisoners that were required to file multiple grievances about the same subject and discovered that the prison had created a scheme to deliberately place wrong grievance numbers on grievances of prisoners that

---

[9]I have quoted Claim Six as written, without correction or acknowledgment of error.

were likely to pursue law suit against prison staff such as me (eg. Stanley Jones # 103331).

As reflected in DeCesaro's letter to me at Exhibit-G-2, A prisoner has 5 days between grievance steps to file the next step.  My Step II Retaliation Grievance was filed on the same day that I received the answer to my Step I Grievance (Oct. 25, 2011).  Please see attached Exhibits D & E.  Decesaro deliberately ignored that when Dino Williams altered my Step II Retaliation Grievance with the wrong grievance number R-LF-11/12-00001083-1 that 60 days had passed which prohibited (as DeCesaro admits himself) any type of action on grievance # R-LF-11/12-00001083-1.  Please see Exhibit-C (Civil Rights Violation Grievance).

The attached Exhibits reflect that these two Defendants participated in a conspiracy to retaliate against me and prevent the exhaustion of my prison administrative grievance remedies making the grievance process unavailable to me.

Id.

The defendants seek dismissal of Claim Six for failure to allege personal participation of defendant DeCesaro. *Motion*, pp. 2-4.  The plaintiff does not allege that defendant DeCesaro in any way caused or participated in the alleged altering of his grievances.  The plaintiff attempts to hold DeCesaro liable solely on the basis that he denied the plaintiff's grievance.  Denial of a grievance is insufficient to establish personal participation in an alleged constitutional violation. Larson v. Meek, 240 Fed.Appx. 777, 780 (10th Cir. 2007).

Moreover, the Complaint does not contain any specific factual allegations against defendant Steven Owens.  A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted).  This is especially

true in cases, like this one, where the defense of qualified immunity has been asserted.  Id. at

1248-49.

    To state a claim in federal court, a complaint must explain what each defendant did to the

plaintiff; when the defendant did it; how the defendant's action harmed the plaintiff; and what

specific legal right the plaintiff believes the defendant violated.  Nasious v. Two Unknown

B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).  The plaintiff has failed to state a claim

against defendant Owens.

    Finally, the plaintiff's allegations that Owens and DeCesaro participated in a conspiracy

are vague, conclusory, and frivolous.  Claim Six should be dismissed in its entirety.

### 7.   Failure to Allege Physical Injury

    The defendants assert that the plaintiff is not entitled to declaratory relief or monetary

damages because the plaintiff has failed to allege physical injury as required by the Prisoner

Litigation Reform Act ("PLRA").  The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a
> jail, prison, or other correctional facility, for mental or emotional
> injury suffered while in custody without a prior showing of
> physical injury.

42 U.S.C. § 1997e(e).

    Section 1997e(e) applies regardless of the nature of the underlying substantive violation

asserted.  Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to

the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e)

bars recovery of compensatory damages for failure to allege physical injury, it does not bar

recovery of punitive damages or declaratory or injunctive relief.  Id. at 881; Perkins, 165 F.3d at

808.

My review of the Complaint reveals that the plaintiff alleges physical injury only as to his claim for lack of exercise.  The plaintiff's exercise claim fails to state a claim upon which relief can be granted.  Therefore, the plaintiff's remaining claims are barred to the extent they seek compensatory damages.  Section 1997e(e) does not bar the plaintiff's remaining claims insofar as they seek punitive damages or declaratory or injunctive relief.

### 8.  Punitive Damages

The defendants argue that the plaintiff has not alleged facts to support a claim for punitive damages.  *Motion*, pp. 6-7.  "Punitive damages are available in § 1983 actions [and] are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Youren v. Tintic School Dist., 343 F.3d 1296, 1308 (10th Cir. 2003).

The plaintiff's remaining claims allege that defendants Lt. Audet and Brightwell retaliated against the plaintiff for accessing the grievance process, and defendant Medina created a program which denied the plaintiff access to the court.  If believed, the plaintiff's allegations could show "reckless or callous indifference" to his federally protected rights.  The Motion should be denied insofar as it seeks dismissal of the plaintiff's claim for punitive damages.

## IV.  CONCLUSION

I respectfully RECOMMEND that the defendants' Motion to Dismiss [Doc. #27] be

GRANTED IN PART and DENIED IN PART as follows:

1.   DENIED insofar as it seeks dismissal of (a) Claim One's allegations that Lt. Audet

terminated the plaintiff's employment in retaliation for threatening to file a grievance against

him; (b) Claim Four's allegations that Warden Medina denied the plaintiff access to the court;

(c)  Claim Five's allegations that defendant Brightwell retaliated against the plaintiff for filing a

grievance against Lt. Audet; and (d) the plaintiff's claim for punitive damages against Lt. Audet,

Brightwell, and Medina; and

2.   GRANTED to the extent it seeks dismissal of (a) all other claims against the

defendants, and (b) the plaintiff's claim for compensatory damages.[10]

Dated December 12, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[10]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).