IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00901-MSK-BNB

JAMES RALPH DAWSON, JR.,

        **Plaintiff,**

v.

PAUL AUDET;
DONALD BRIGHTWELL; and
ANGEL MEDINA,

        **Defendants.**

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTONS SUMMARY JUDGMENT

---

    **THIS MATTER** comes before the Court on motions from both parties.  Mr. Dawson filed a Motion for Partial Summary Judgment (**#84**) and supporting Brief (**#85**), the Defendants' responded (**#91**), and Mr. Dawson replied (**#94**).  Defendants' also filed a Motion for Summary Judgment (**#86**).

### I.    ISSUES PRESENTED

    Mr. Dawson, a prisoner in the custody of the Colorado Department of Corrections ("CDOC"), brings this *pro se* action pursuant to 42 U.S.C. § 1983.[1]  The Defendants are CDOC

---

[1] The Court is mindful of Mr. Dawsons's *pro se* status, and accordingly, reads his pleadings and filings liberally.  *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594 (1972); *see also Trackwell v. United States Govt,* 472 F.3d 1242, 1243 (10th Cir. 2007).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a

employees, and all of Mr. Dawson's claims against Defendants relate to his incarceration at the Limon Correctional Facility (LCF). Specifically, Mr. Dawson asserts that: (1) Mr. Audet terminated Mr. Dawson from his prison job in retaliation for Mr. Dawson's threat to file a grievance; (2) Mr. Brightwell retaliated against Mr. Dawson for filing a grievance against Mr. Audet; and (3) Mr. Medina impeded Mr. Dawson's access to the courts.

Mr. Dawson and the Defendants each move for summary judgment on all of Mr. Dawson's claims.

## II.    MATERIAL FACTS

Based upon the evidence submitted by the parties,[2] the material facts are rather straight forward. The Court views the submissions in the light most favorable to the non-moving party. Although both sides seek summary judgment here, for purposes of expediency, the Court generally construes the facts in the light most favorable to Mr. Dawson, unless otherwise noted.

Mr. Dawson's retaliation claims against Mr. Audet and Mr. Brightwell relate to his termination from his prison job in the LCF recreation department. While working in the LCF recreation department on September 30, 2011, Mr. Dawson approached Mr. Audet, who was supervising the recreation staff and offenders, and requested to return to his living unit to make a legal phone call. Mr. Audet refused Mr. Dawson's request because his scheduled shift was not complete. In response, Mr. Dawson told Mr. Audet that he was going to file a grievance against

---

defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton,* 587 F.3d 1063, 1067 (10th Cir. 2009).

[2] The Defendants argue that the Court should disregard the affidavit which Mr. Dawson filed in conjunction with his Motion for Partial Summary Judgment (**#84**) because it is "not notarized and is more akin to a declaration" and it presents "self-serving and conclusory statements, insufficient to survive summary judgment." The document states that Mr. Dawson makes the representations "under . . . the penalty of perjury" and is signed by him and thus, the document is treated as an affidavit pursuant to 28 U.S.C. § 1746.

him.  Mr. Audet then directed Mr. Dawson to return to his living unit and stated that he would be

released from his recreation department job.  Mr. Audet filed an incident report stating that

"[Mr.] Dawson refused to work in Recreation."  On the same day, Mr. Dawson completed a Step

One Grievance Form ("the grievance") complaining about Mr. Audet's conduct.  He submitted

the grievance to Mr. Brightwell that same day.[3]

Mr. Brightwell was responsible for making a computer entry reflecting Mr. Dawson's

termination from his job.  Mr. Dawson has submitted evidence indicating that Mr. Brightwell

made that entry on or about October 1, 2011.  (Mr. Brightwell's affidavit regarding the matter

does not recite a particular date.)   Mr. Brightwell initially classified Mr. Dawson as

"Unassigned-Complete," a status that generally does not result in any loss of inmate privileges.

However, Mr. Brightwell contends that he later realized that this was a "typographical error" and

corrected Mr. Dawson's status to "Unassigned-30," a code used by CDOC to designate offenders

who have been terminated from a job and, as a result, are required to remain unassigned for

thirty days before becoming eligible for a new job.  Inmates classified as "Unassigned-30" also

lose a variety of privileges including single-cell status, additional time outside their cells, etc.

Mr. Dawson's claim against Mr. Medina relates to a scheduling policy implemented by

Mr. Medina as the Warden of LCF. The scheduling policy limited the amount of time unassigned

offenders could spend outside of their cells on a daily basis.  From October 15, 2011 to

November 16, 2011, Mr. Dawson was allowed out of his cell for 30 minutes daily, Monday

through Friday after 6:00 p.m. but was often unable to reach his lawyer during this time because

---

[3]      This fact is disputed.  Although Mr. Dawson asserts that he submitted the form on
September 30, 2011, the "date received" noted on the form is October 5, 2011.  For purposes of
Mr. Brightwell's motion, the Court gives Mr. Dawson the benefit of the September 30 date;
when considering Mr. Dawson's motion, the Court assumes Mr. Brightwell received the
grievance on October 5.

he had to spend his time standing in line to either shower, access legal help or material from fellow inmates, access the unit office to obtain legal access kites, cleaning supplies, and communicate with staff. Mr. Dawson argues that this limited time impeded his ability to successfully pursue an appeal to Colorado Supreme Court by precluding him from learning about additional arguments he could have raised.

Both sides now seek summary judgment on all claims by/against them. The Court addresses their specific arguments in its discussion. Mr. Dawson did not respond to the Defendants' summary judgment motion, but the Court treats Mr. Dawson's reply in support of his own motion as his response to the Defendants' motion as well.

### III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed.R.Civ.P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## IV.    ANALYSIS

This case involves cross-motions for summary judgment. Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently. *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.,* 209 F.Supp.2d

1106, 1112 (D.Colo.2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir.2000). Here the Court begins with the Defendants' Motion.

### A. Claim Against Mr. Audet

Mr. Dawson asserts that Mr. Audet terminated him from his prison job in retaliation for his threat to file a grievance against Mr. Audet. In addition, read liberally, he also contends that once the grievance was filed, his status was changed from being "released" from his job to being "fired" from it. Mr. Audet seeks summary judgment on this claim, contending that Mr. Dawson cannot establish a *prima facie* case of retaliation, and, even if he can, that Mr. Audet is entitled to qualified immunity.

The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell,* 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity requires a "two-step sequence." *Pearson v. Callahan,* 555 U.S. 223 (2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009).

The first prong of the qualified immunity analysis requires a plaintiff to show that the defendant's actions deprived him or her of a constitutional or statutory right. *See Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995). A plaintiff must precisely articulate the right that was allegedly violated and specifically identify the defendant's conduct that violated the right. *See Green,* 574 F.3d at 1300. At the summary judgment stage, this prong requires a plaintiff to present sufficient competent evidence to establish a *prima facie* claim. The second prong of the

qualified immunity analysis requires a plaintiff to show that the identified right was clearly established based on the specific facts of the case. *See Brosseau v. Haugen,* 543 U.S. 194, 199–200 (2004). The inquiry focuses on whether prior caselaw from the Supreme Court or Tenth Circuit put the defendants on notice that the alleged conduct would be unconstitutional, or, in the absence of such controlling authority, a clear pattern in decisions from other Circuit Courts recognizing the right. *See Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir.2006); *see also Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir.2010). Only if the plaintiff satisfies both steps is qualified immunity defeated. The Court has discretion begin its analysis with either prong. *See Pearson,* 555 U.S. at 223; *Green,* 574 F.3d at 1299.

It is undisputed that prison officials may not retaliate against a prisoner for exercising of his or her constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *see also Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006). To establish retaliation claim under §1983, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's actions were substantially motivated as a response to his constitutionally protected conduct. *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009). To satisfy the third element a plaintiff must establish "that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998). To do so, the plaintiff "must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." *Id.* (emphasis added).

The Court first turns to the "clearly established" prong of the qualified immunity examination, particularly with regard to the first element of a retaliation claim. Taken in the

light most favorable to Mr. Dawson, the record reflects that Mr. Dawson stated to Mr. Audet: "you are refusing me legal access, I'm going to grieve you."  The question of whether a threat to file a grievance against a prison official constitutes conduct protected by the First Amendment does not appear to have been squarely addressed by either the Supreme Court or Tenth Circuit.[4] (At the very least, neither Mr. Dawson nor the Defendants have pointed the Court to controlling authority, and the Court's own research has not revealed any.)  That question is unsettled in several other circuits.  In *Bridges v. Gilbert*, 557 F.3d 541, 554-55 (7th Cir. 2009), the court expressed doubt as to whether a threat to file a grievance would constituted First Amendment activity, stating "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance," but ultimately resolved the matter on different grounds. *See also Brown v. Darnold*, 505 Fed.Appx. 584, 587-88 (7th Cir. 2013) ("we have not decided whether a threat to grieve is a protected activity").  Similarly, the question is an open one in the Sixth Circuit.  *Pasley v. Conerly*, 345 Fed.Appx. 981, 984-85 (6th Cir. 2009) (unpublished) ("This circuit appears not to have determined conclusively whether merely threatening to file a grievance constitutes protected activity").  The Fifth Circuit adheres to a more complicated formulation, arguably granting threats to file a colorable grievance First Amendment protection but holding that threats to file frivolous grievances are not protected conduct.[5]  *Compare Ford v. Jones*, 149 Fed.Appx. 316, 317 (5th Cir. 2005) (unpublished) (First Amendment retaliation claim

---

[4]     A number of circuits, including the Tenth Circuit, have held that a prisoner's First Amendment right to petition the government for redress for grievances encompasses the <u>filing</u> of inmate administrative grievances or appeals. *Fogle*, 435 F.3d at 1252.  But those cases do not address whether <u>threats</u> to do so enjoy the same protection.

[5]     Were this Court to apply the Fifth Circuit's standard, it would be inclined to find that Mr. Dawson's threat to grieve Mr. Audet for refusing to allow Mr. Dawson to make a phone call to his lawyer was frivolous, given that Mr. Dawson acknowledges that he had not arranged that call in advance, as required by prison regulations.

by inmate who was forced to stand outside without a jacket after threatening to file a grievance stated a cognizable claim) *with Brown v. Craven*, 106 Fed.Appx. 257, 258 (5th Cir. 2004) ("Because Brown's threatened grievance would have been frivolous, it may not be the basis of a retaliation claim").

As noted above, to overcome an officer's qualified immunity, an inmate must demonstrate that a particular legal right is "clearly established" by pointing to binding Supreme Court or Tenth Circuit authority recognizing that right, or by showing that the weight of Circuit Court authority recognizes that right. *See P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196-97 (10th Cir. 2010). Because Mr. Dawson has not shown, and apparently cannot show, that the law "clearly establishes" that an inmate's threat to file a grievance against a prison official enjoys First Amendment protection, Mr. Audet is entitled to qualified immunity on Mr. Dawson's retaliation claim.[6]

### B.  Claim Against Mr. Brightwell

Mr. Dawson asserts that, after receiving Mr. Audet's incident report, Mr. Britghtwell initially classified Mr. Dawson as "Unassigned-complete," but, upon learning that Mr. Dawson had filed a grievance against Mr. Audet, Mr. Brightwell changed that status to "Unassigned-30." in retaliation for the grievance he filed against Mr. Audet. The same standards discussed above govern Mr. Dawson's First Amendment retaliation claim against Mr. Brightwell.

Mr. Brightwell contends that Mr. Dawson cannot show that he engaged in constitutionally-protected activity – at least, protected activity that preceded Mr. Brightwell's

---

[6]      The Court has also considered whether Mr. Dawson can allege an additional retaliation claim against Mr. Audet relating to Mr. Brightwell's decision to classify, and then subsequently re-classify, Mr. Dawson based on Mr. Audet's incident report. Because Mr. Dawson alleges no facts showing that Mr. Audet took any additional actions beyond writing up the initial incident report that Mr. Brightwell relied upon, such a claim would not survive.

actions.  It is undisputed that Mr. Dawson <u>did</u> complete a grievance against Mr. Audet and that

he provided that grievance to Mr. Brightwell, and there can be no dispute that Mr. Dawson's

actual filing of a grievance is clearly established as constitutionally-protected conduct.  However,

there is a genuine factual dispute between the parties as to when Mr. Dawson provided the

grievance to Mr. Brightwell, as well as some degree of factual dispute as to when Mr. Brightwell

re-classified Mr. Dawson.  Mr. Dawson contends that his presents a question of timing that is

disputed by the parties.  Mr. Dawson contends that he submitted the grievance against Mr. Audet

to Mr. Brightwell on September 30, 2011; Mr. Brightwell signed the grievance acknowledging

his receipt of it on October 5, 2011.  The record is somewhat unclear as to precisely when Mr.

Brightwell classified Mr. Dawson – Mr. Brightwell's affidavit describing his actions does not

specify a date – but Mr. Dawson has provided a printout of prison records that show him

classified as "Unassigned" (it is not clear which subtype of "Unassigned") effective October 1,

2011.  Taking this evidence in the light most favorable to Mr. Dawson, as the Court must for

purposes of Mr. Brightwell's motion, the Court finds that there is a genuine dispute of fact as to

whether Mr. Brightwell had knowledge of Mr. Dawson's grievance against Mr. Audet at the time

he classified Mr. Dawson.  (Similarly, taking the facts in the light most favorable to Mr.

Brightwell for purposes of Mr. Dawson's summary judgment motion, there is a genuine issue of

fact as to timing, requiring the denial of Mr. Dawson's motion.)

       The Court turns to the second element: whether Mr. Brightwell's re-classification of Mr.

Dawson to "Unassigned-30" and the concomitant loss of privileges was sufficiently adverse to

chill a reasonable inmate's First Amendment activities.  Mr. Brightwell's argument on this point

is somewhat opaque.  He argues that his "only involvement was to input Dawson's job

termination into the computer" and that classification of Mr. Dawson as "Unassigned-30" was

required by prison regulations in such circumstances.  But these arguments do not address the question of whether Mr. Brightwell's actions were of sufficiently serious consequence to have the requisite chilling effect.  Although the Court has some doubts as to the sufficiency of Mr. Dawson's evidence on this point, *see Rocha v. Zavaras*, 443 Fed.Appx. 316, 317-19 (10th Cir. 2011) (unpublished) (inmate placed on "restricted privilege" status that limited his access to recreation activities, caused him to be assigned to segregated housing, delayed his calls to the mess hall, restricted his canteen purchases, and prevented him from contacting other inmates was not conduct having a sufficient chilling effect to support a First Amendment retaliation claim), Mr. Brightwell has not offered a sufficiently detailed argument in this regard, and the Court declines to make it for him.

The Court then proceeds to the third element: whether Mr. Brightwell's decision to classify Mr. Dawson as "Unassgined-30," instead of "Unassigned-complete" as Mr. Brightwell initially classified him, was motivated by Mr. Dawson's grievance against Mr. Audet.  Taking Mr. Dawson's version of events in his summary judgment motion as true, Mr. Dawson states that he presented his grievance against Mr. Audet to Mr. Brightwell on September 30, 2011, and that Mr. Brightwell "was offended by the grievance, turned red in the face, and snatched the grievance from [Mr. Dawson's] hand."  The record appears to reflect that Mr. Brightwell classified Mr. Dawson as "Unassigned-complete" on or about October 1, 2011, and changed that assignment to "Unassigned-30" the following day.

Assuming that Mr. Brightwell did indeed intend to unfavorably classify Mr. Dawson from the outset, the question remains whether Mr. Dawson can show that the decision was motivated by Mr. Dawson's grievance.  It is undisputed that Mr. Audet completed an incident report stating that "I told Dawson . . . he would be released from Recreation to find employment

that was more suited to his needs." Mr. Brigtwell contends, without contradiction, that Mr.

Audet also telephoned him on September 30 and reported that Mr. Dawson was "terminated

from his job." There is at least a conceivable conceptual difference between an inmate being

"released" from a job "to find employment more suited to his needs" and an inmate who is

"terminated" from his job. The former conveys a good-faith disagreement between employer

and employee without necessarily casting aspersions on the employee's performance, whereas

the latter necessarily implies the employee's poor performance or misconduct. Mr. Brightwell's

affidavit states, without apparent contradiction from Mr. Dawson, that "Unassigned-complete"

status is appropriate "to identify offenders who successfully complete a program or work

assignment," whereas "Unassigned-30" status is appropriate for "an offender terminated from his

job for cause." Arguably, Mr. Audet's use of the word "released" in the Incident Report is more

indicative of job completion than termination, and thus, arguably, Mr. Brightwell was required

by Mr. Audet's Incident Report to classify Mr. Dawson as "Unassigned-complete," not

"Unassigned-30." Thus, a factfinder could reasonably infer that Mr. Brightwell's decision to

change Mr. Dawson's status to a more unfavorable one was not justified by Mr. Audet's Incident

Report and was motivated by retaliation.

The Court need not belabor the second prong of the qualified immunity analysis. As

noted above, it is axiomatic that prison officials cannot retaliate against inmates simply because

the inmate elected to file a grievance. *Fogle*, 435 F.3d at 1252. Accordingly, the Court finds

that Mr. Brightwell's retaliation against Mr. Dawson, if proven, violated a clearly established

right.

Accordingly, Mr. Brightwell's motion for summary judgment is denied. Turning to Mr.

Dawson's motion for summary judgment on this claim, the facts taken in the light most favorable

to Mr. Brightwell indicate that he did not receive Mr. Dawson's grievance until October 5, 2011, after he had made the adverse classification decision, and thus, there is a genuine dispute as to the element of causation.  Accordingly, both sides' motions for summary judgment are denied and the claim against Mr. Brightwell will proceed to trial.

### C.  Claim Against Mr. Medina

Mr. Dawson asserts that Mr. Medina implemented scheduling policies that resulted in Mr. Dawson being denied access to the courts.  Specifically, he argues that the policies restricted his ability to consult with his attorney and fellow prisoners, which prevented him from learning of a potentially-meritorious legal argument that he did not present, which resulted in the Colorado Supreme Court's denial of his petition for writ of certiorari.

Mr. Medina asserts that summary judgment is appropriate in his favor because Mr. Dawson cannot establish a *prima facie* case that he was denied access to the courts and, even Mr. Dawson establishes a *prima facie* case, that the Mr. Medina is entitled to qualified immunity.

As discussed above, the Court has discretion to begin its qualified immunity analysis with either prong.  *See Pearson v. Callahan,* 555 U.S. 223 (2009); *Green,* 574 F.3d at 1299.  Here, the Court begins with the first prong and considers whether Mr. Dawson can establish a *prima facie* case against Mr. Medina.

Prisoners have a right to obtain access to the courts to pursue legitimate legal claims.  *See Lewis v. Casey,* 518 U.S. 343, 351 (1996).  To establish a claim of denial of access to the courts, a plaintiff must plead and prove that he actually was impeded in his ability to pursue a non-frivolous claim.  *Id.* at 353; *see also Trujillo v. Williams,* 465 F.3d 1210, 1226 (10th Cir.2006) (plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation").

Here, Mr. Medina argues that there is insufficient evidence to establish that Mr. Dawson was impeded in filing a petition to the Colorado Supreme Court or to show that his petition was not frivolous.  Even assuming that his petition was not frivolous, the Court concludes that Mr. Dawson has failed to demonstrate that he was actually impeded in pursuing his claim.  Mr. Dawson was able to file a petition for writ of certiorari to the Colorado Supreme Court.  In fact, he filed his petition nearly two weeks before the filing deadline.  There is also evidence that, during the relevant time period, he received four appointments with the LCF law library.  He also received a number of copies from the law library, as well as envelopes, paper, and court captions.  Even when viewed in the light most favorable to Mr. Dawson, the evidence submitted shows that he had significant access to the LCF law library and was able to obtain supplies upon request, despite the contested scheduling policy.  Thus, the evidence does not support a conclusion that Mr. Dawson was impeded in filing his petition for writ of certiorari.

Mr. Dawson argues that, due to competing demands on his limited time, he "did not have time or access to his attorney or fellow inmates to articulate a comprehensive argument."  A month after submitting his petition, "a fellow inmate informed [Mr. Dawson] that he should research *ex post facto* violations," and Mr. Dawson states that his attorney later confirmed to him that "he should have raised his claim as an *ex post facto* judicial decision."  In *Shaw v, Murphy*, 532 U.S. 223, 230 (2001), the Supreme Court rejected the notion that inmate-to-inmate legal communications enjoyed some heightened constitutional protection; the Supreme Court held that such discussions could be regulated in the same manner as any other prison conduct, subject only to the requirement that the regulation meet the four-part *Turner* standard.[7]  Mr. Dawson has not

---

[7]     Specifically, the restriction must: (i) advance a legitimate governmental interest; (ii) should allow appropriate alternative means of exercising the right; (ii) should consider the

come forward with any evidence that would suggest that Mr. Medina's policy, to the extent it inhibited Mr. Dawson's ability to timely confer with his fellow inmates to plot a legal strategy, ran afoul of the *Turner* standard.

Moreover, contrary to Mr. Dawson's contentions, the record reflects that accessing his fellow inmates was one of the tasks he pursued with the limited time made available to him.  He states that he "used his time out of his cell choosing between waiting in line to shower, access legal help or legal materials from fellow inmates, access the unit office to communicate with prison staff and obtain legal supplies, access the telephones, or walk around the pod as exercise." The fact that Mr. Dawson may have allocated his time unwisely, or failed to confer with the wisest of his fellow inmates is a matter of his own choosing.  Because Mr. Dawson has not shown that the policies enacted by Mr. Medina prevented him from having the ability to present his petition, summary judgment is appropriate in Mr. Medina's favor.

## V.   CONCLUSION

For the foregoing reasons

(1) Mr. Dawson's Motion for Partial Summary Judgment (**#84**) is **DENIED**.

(2) Defendants' Motion for Summary Judgment (**#86**) is **GRANTED in part**, as to the claims against Mr. Audet and Mr. Medina, and **DENIED in part**, as to the claim against Mr. Brightwell.  Judgment against those Defendants shall enter at the conclusion of proceedings in this action.

---

impact on prison administration of accommodating the right claimed by the inmate; and (iv) should consider the absence of ready alternatives.  *Id.*

(3) Only the § 1983 claim against Mr. Brightwell will proceed. The caption of the case is

**AMENDED** to omit all Defendants except Mr. Brightwell.  Consistent with Mr.

Dawson's express request in his Complaint (**# 1**), a bench trial will be conducted.

(4) The parties shall promptly begin preparation of a Proposed Pretrial Order consistent with

the January 31, 2013 Trial Preparation Order (**# 50**) and shall make arrangements to

jointly contact chambers to schedule a Pretrial Conference.

Dated this 30th day of September, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

16